## THE STATE v. BURT ADAMS, Appellant.

**Division Two, February 19, 1913.**

1. **ATTEMPT TO RAPE: Evidence: Appeal.** In the absence of a brief for appellant, who has been found guilty of attempted rape, the Supreme Court closely scrutinizes the evidence to see that no injustice shall be done him.

2. ———: ———: **Sufficiency.** Evidence *held* sufficient to support a conviction for attempted rape.

3. **INSTRUCTIONS: Defendant's: Points Already Covered.** It is not error to refuse an instruction asked by the defendant in a criminal case, when all the points touched by it have been covered by an instruction given by the court.

Appeal from Christian Circuit Court.—*Hon. John T. Moore,* Judge.

AFFIRMED.

*G. Purd Hays* for appellant.

*Elliott W. Major,* Attorney-General, and *Ernest A. Green,* Assistant Attorney-General, for the State.

ROY, C.—The defendant was convicted of an attempt to rape Freedie Ewing, a girl under the age of fourteen years. He was sentenced to three years in the penitentiary, and has appealed.

It is alleged that the offense was committed on May 11, 1911. The defendant was married November 3, 1910. His wife was a witness in his behalf. She was the mother of an illegitimate child born about six months before the marriage. The defendant was not the father of the child.

Freedie Ewing lived with her parents in the country about half a mile from the defendant. On the morning of May 11, 1911, defendant's wife went to the Ewing home to see about the pay for some ties. Freedie's mother allowed her to go home with Mrs. Adams under the injunction that she should return home at four o'clock. Freedie and Mrs. Adams left the Ewing home just before noon. They went into the hills some distance from defendant's home, where the defendant and his wife and Freedie "dug roots" for a while, then picked some wild strawberries. The defendant killed some quails and they cooked them for dinner, which was eaten at the defendant's home.

Freedie testified to a very lascivious conversation between defendant and his wife just after dinner, and stated that upon hearing it she said she was going home, but was induced to go to the garden where they planted some peas; after which the conduct and conversation of defendant and his wife again became obscene and very suggestive. Freedie testified that they went to the house and into a room with a front and a back door and one small window which did not open. After entering, both doors were closed and a skirt hung over the window. Mrs. Adams proceeded to show Freedie some pictures. They were all sitting on the bed. Defendant made an indecent exposure of his person and made improper proposals to Freedie. She tried to go home, but they stood, one in each door, and refused to let her go. Defendant pushed Freedie over on the bed, threw himself on her, and held her mouth with his hand, having pulled down her "bloomers," which were held around her waist with rubber. Defendant's wife was trying to persuade Freedie to submit to defendant, when the little girl's mother knocked on the door. She testified as follows: "Mr. Adams jumped off and says: 'Now if you ever tell this, I will hurt you; get off this bed,' and I got up off the bed and went behind the door and pulled up my bloomers, and Mrs. Adams went to the door and it was mama."

Freedie's mother stated that Mrs. Adams begged her to allow the girl to go with her and that it was after sun-down when she went to defendant's home. As to her daughter's appearance when she saw her at defendant's house, she testified: "She won't look any worse when she is dead than she looked when she came to the door."

The defendant and his wife both denied that they had indulged in any lewd language or conduct in the presence of the girl. They admitted that the doors of the house were closed, but said it was for the pur-

pose of keeping some pigs out of the house. They admitted that they were on the bed and that defendant was lying on the bed, but they stated that Freedie had thrown herself on the defendant and was pinching him, and that he had shoved her away from him, and that he had got a book and that Freedie was deviling him and would not let him read.

There was no impeachment in any respect of the prosecuting witness. There was no showing of any sinister motive on her part or on that of her mother in prosecuting defendant.

The court's instructions covered all the law arising on the evidence in the case.

Instruction number two is as follows:

"The jury are instructed that the information charges, and that the defendant is on trial, for an assault with intent to commit the crime of rape, and the intent to rape must be proven by the State, and unless it has been proven that the defendant entertained the specific intent to commit a rape upon the prosecuting witness, Freedie Ruth Ewing, then the jury should acquit the defendant."

The defendant asked the following instruction which was refused by the court:

"The court instructs the jury that if the acts, as testified to by the witnesses, were done by the defendant without the intention of having carnal knowledge of her, the prosecuting witness, then they only amounted to indecent and lascivious conduct, and, however reprehensible morally, did not constitute an assault to commit a rape."

The defendant also asked an instruction in the nature of a demurrer to the evidence.

No questions were raised as to the admission or exclusion of evidence. The information and record proper are regular and sufficient in law.

We have not the assistance of a brief on the part of the defendant, and have, for that reason, deemed

**Attempted Rape: Evidence.** it our duty to closely scrutinize the evidence to see that no injustice shall be done the defendant. [State v. Goodale, 210 Mo. l. c. 283.]

It was also held in that case that a conviction for rape can be sustained on the uncorroborated evidence of the outraged female. In this case we find that the evidence of the young girl is, in many respects, corroborated by that of the defendant and his wife and by the child's mother. It is conceded that in the afternoon of a day in May both doors in the room were shut. The defendant and his wife say that they were closed to keep out the pigs. Such an explanation is, to say the least, almost absurd. It is hard to believe that pigs would force themselves into a room where there were three persons and where they were not tempted to enter by the presence of food of some kind. The defendant and his wife contend that he was lying on the bed and that the child had thrown herself on him and was pinching him. That is a concession, to say the least of it, that there was something wrong, and that something, taken with the fact that the doors were closed, constitutes a strong corroboration of Freedie's evidence. In the absence of any impeachment of the prosecutrix or her mother, and in the absence of any motive for other than an honest prosecution of the defendant, we are fully satisfied with the sufficiency of the evidence to sustain a conviction.

The instruction asked by the defendant and refused by the court was fully covered by instruction **Instructions.** numbered two given by the court, so that such refusal was not error.

The judgment is affirmed. *Williams, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All the judges concur.